[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Review of the File
This matter first came to the court by virtue of a complaint dated November 27, 2000 and returnable December 19, 2000, in which complaint the petitioning plaintiff husband requested a dissolution of the marriage, custody of the minor children, support of the minor children, exclusive use of the jointly owned family home located at 52 Parrish Hill Road, Windham, Connecticut. The complaint in the first instance was brought by counsel for the plaintiff petitioner. Along with the complaint was filed a motion for custody, support pendente lite, exclusive use of the family home, which was the subject of a stipulation accepted by the court on January 29, 2001, Kenefick, J. The usual automatic orders accompanied the complaint as well as the return by the sheriff indicating abode service on the defendant.
On January 4, 2001, the plaintiff by counsel filed a motion entitled "Motion for Payment of Bills" as concerns certain joint obligations of the parties. There was, on January 29, 2001, a certain stipulation filed by the parties providing for pendente lite joint legal custody of the minor children, visitation, a provision for the defendant paying support to the plaintiff in the amount of $149.00 a week and providing for medical coverage by the principals for the benefit and welfare of the children.
On January 29, 2001, the plaintiff filed a financial affidavit as did the defendant.
On January 29, 2001, the defendant appeared by counsel. CT Page 1152
On April 4, 2001, plaintiff's then counsel filed a motion for contempt as concerns the afore noted support order. It does not appear in the file that that motion was acted upon.
On April 11, 2001, the defendant filed a motion for contempt as concerns certain motor vehicles.
On July 31, 2001, the plaintiff filed a motion for contempt as concerns a claim of support payments not having been properly made by the defendant and a lengthy letter accompanied the motion which was being processed at that juncture by the plaintiff in a pro se capacity; the plaintiff having filed an individual appearance on July 31, 2001.
By motion dated August 7, 2001, the original counsel for the plaintiff filed for leave to withdraw, which was granted by the court in due course.
The defendant then on September 20, 2001 filed an answer to the complaint and a cross complaint and in the cross complaint the defendant requested a dissolution of the marriage, joint custody, an equitable property settlement and such other equitable relief as the court deems appropriate.
On October 3, 2001, this matter was stricken to the limited contested list by order of the court, Devine, J.
On December 27, 2001, the defendant filed a motion for contempt as well as a motion to modify child support pendente lite. There is no indication in the file that those motions were acted upon.
The plaintiff in a pro se status and the defendant with counsel appeared before the court on January 16, 2002 with their witnesses and the matter was heard to a conclusion.
The court makes the following findings of fact:
The defendant wife's maiden name at the time of marriage was Angela O'Neill.
The parties were joined in marriage on February 18, 1983 at Willimantic. The defendant's former married name was Goss.
The parties have resided in Connecticut for more than one year next preceding the filing of the complaint.
There are two children issue of this marital relationship; to wit, CT Page 1153 Cynthia Beckert born July 24, 1983 now age 18 and Stephanie Beckert born September 9, 1984. There were no other children born to the parties during the marriage. The parties have not been the recipients of welfare or assistance either from the State or any town, city or municipality or subdivision thereof.
The marriage has irretrievably broken down with no reasonable prospect for reconciliation. The parties have requested that the court grant joint legal custody of the minor daughter Stephanie to the parties; the plaintiff father to be the primary custodial and residential parent.
The parties own certain real estate situated at 52 Parrish Hill Road in North Windham. According to the testimony, the title stands in both names and there are, according to the testimony, two mortgages on the property; a mortgage to Farmer's Home Loan Administration in the amount of $34,000.00, which would be due and payable in the event that the property was sold, and a mortgage to GMAC in the amount of $39,000.00 ±.
The plaintiff's testimony was to the effect that the marriage for many years was a good marriage but claimed that the defendant was involved in having an affair outside the home, which it was claimed caused the defendant to leave the home one week after the disclosing of that matter between the parties.
During the pendency of this marriage, by and large, the defendant handled the finances.
The plaintiff is desirous of having the court direct that the defendant pay, in his words, her fair share of outstanding debt.
The plaintiff, being in a pro se status at time of trial testifying on his own behalf, indicated that he does not smoke nor imbibe in strong drink.
His testimony was to the effect that he had never engaged in any violent physical conduct to the detriment of the defendant.
The plaintiff did acknowledge, in his words, verbally assaulting the defendant at the time of her departure from the home.
Again, the plaintiff indicated that alcohol and drugs were not a factor in the breakdown of the marriage.
It was the plaintiff's testimony that the defendant was indiscreet in 1996 and again in 1998; allegedly with the same person. The plaintiff's testimony was to the effect that the defendant acknowledged that the CT Page 1154 indiscretions had occurred.
In 1996, it appeared from the testimony, that certain group intimacies occurred and that it reoccurred in 1998. The plaintiff acknowledging partial blame for this course of conduct.
The plaintiff's testimony was to the effect that he endeavored to solve the difficulties and problems in the marriage by discussion and that the defendant was not persuaded to change and moved in with a co-worker.
The plaintiff's testimony was to the effect that the person that the defendant moved in with was one David Smith.
The plaintiff acknowledged that until the separation that the defendant was, in his words, a great mother and wife.
The parties have been separated since October of 2000. Both parties have sought counseling on their own.
The two girls, only Stephanie being now still a minor, stayed with the plaintiff.
The plaintiff is employed by the State of Connecticut, Department of Transportation and has been affiliated with that organization for 22 years.
The 1997 Mitsubishi automobile reflected on the financial affidavits, according to the testimony, is registered in the name of the plaintiff's father.
There is allegedly a bank account in the name of the adult child Cynthia and the defendant. The bank and the amount thereof is not presently known to the court.
Among other requests, the plaintiff requested that the defendant return to him a certain violin which he indicated was a valuable musical instrument.
It was the plaintiff's claim that the defendant was nine weeks delinquent with regard to the outstanding support payment, which were in the amount of $149.00.
At the time that the defendant left the home, the testimony was to the effect that she gave the plaintiff an $800.00 bonus check.
The plaintiff claims that the present arrearage owed to him by the CT Page 1155 defendant amounts to $1,341.00.
The plaintiff is strongly desirous of endeavoring to keep and maintain the home for the welfare and benefit primarily for the children.
The plaintiff is age 41. He has a bachelor's degree from Eastern College in the field of biology. His health was indicated to be good. His hourly rate of income with his position is now $20.53 an hour for a 37-1/2 hour week. He receives, according to his testimony, $1,539.75 on a bi-weekly basis.
At one point in time after the separation, the plaintiff had a boarder at the home which is no longer the case. The testimony being to the effect that the boarder left owing funds to the plaintiff. The boarder had previously paid $200.00 and then $300.00 weekly, but as indicated, has now left.
The plaintiff appears to be vested insofar as his pension rights incident to his position with the State.
The testimony was to the effect that the Farmer's Home Loan obligation would be due and payable only in the event of a sale of the subject real estate. The real estate taxes presently due and owing, according to the testimony, were to the amount of $6,000.00 ±.
There was a loan to Chrysler Corporation as concerns a motor vehicle that was turned in by the plaintiff voluntarily, presumably to limit debt liability. The result was a deficiency of $5,338.75.
In addition, the testimony indicated that the plaintiff sold the Geo Tracker automobile for $2,000.00.
There was testimony to the effect that outstanding restraining orders previously entered by other jurists had allegedly been violated with regard to e-mail communications initiated by the plaintiff and directed to the defendant and circulated to other third parties.
According to the testimony, the plaintiff has been arrested for a violation of restraining orders and the matter is still pending and has not been disposed of.
The plaintiff acknowledged that he was responsible for and accepted some fault with regard to the breakdown of the marriage and acknowledged that while there was no physical violence between the parties that ten years ago he had "punched a hole in the wall". CT Page 1156
An item of the parties and personalty; to wit, a kayak, the testimony was to the effect that this, although the property of the defendant, had been given to the plaintiff's father to partially pay a debt.
As concerns funds taken from a bank account belonging to the former minor child Cynthia, it was indicated that the account in fact belonged entirely to the child was created solely by her efforts and the defendant acknowledged taking a portion thereof for counsel fees.
The defendant is age 38. She is presently employed at Foxwood's Casino in a surveillance capacity and has been on the job for 4-1/2 years. The defendant has a bachelor's degree in sociology and criminal justice; having secured the same from Eastern Connecticut College.
This marriage is of about 19 years duration in February.
The defendant's testimony was to the effect that she felt that the marriage fell apart after the parties engaged in group indiscretions in which both of the parties apparently participated.
Financial problems existed between the parties and the defendant indicated an inclination to leave the union earlier, but out of financial constraints, delayed doing that.
The defendant has engaged in counseling.
The defendant has a medical eating disorder with which she is afflicted.
The defendant's attitude was to the effect that the plaintiff was critical of her personal appearance and her being overweight; to wit, that the plaintiff told the defendant that if she weighed over 150 pounds that he would not find her attractive.
As indicated, the defendant resides outside of the home with another party and shares expenses in that respect.
The restraining order, which the defendant had to seek, was to prevent a course of conduct on the part of the plaintiff whereby he was making, in the opinion of the defendant, unwarranted or unjustified comments of a personal nature.
In addition, it appears that the defendant also was required to file harassment charges against the plaintiff although no arrest records were presented to the court as exhibits.
At one point in time, the defendant suffered a breakdown and was a CT Page 1157 patient at The Institute for Living in Hartford and out of work for a period of five weeks.
As noted earlier, at the time of leaving, the defendant did give the plaintiff her bonus check from her place of employment in the amount of $850.00 for the purpose of paying off bills.
There were problems between the parties with regard to the motor vehicles and the repossessions, voluntary or otherwise, of the same and the valuations of the vehicles.
In the filing of tax returns, for the last return filed by the defendant, she took the child Stephanie as an exemption.
The defendant agreed to certain aspects of the plaintiff's proposed orders, which will be touched on in due course, including an indicated willingness to pay $96.00 a week for support of the minor child Stephanie.
With regard to the outstanding support order, the defendant has not reduced the same even though Cynthia attained age 18, which was in July of 2001.
The defendant is desirous of keeping and maintaining her modest 401K and has requested of the court 43% of the plaintiff's pension pursuant to a Qualified Domestic Relations Order (QDRO).
The defendant's request as concerns certain personalty will be touched on in due course.
The defendant indicated that she is afflicted with asthma, that she is on a regimen of prescriptions of variety of sorts, that the cost of this to her is to the amount of approximately $400.00 a month.
There was pending the hearing on this matter, a problem with regard to the plaintiff canceling medical insurance insofar as the defendant was concerned, which caused the defendant further costs and expenses in the amount of $400.00. The plaintiff giving the defendant no warning of that course of conduct.
The defendant has requested a permanent restraining order from the court as concerns contacts and the prohibition of e-mail.
During the separation of the parties, the defendant on occasion would give the oldest child Cynthia funds, in one case $190.00, to help pay and assist in the payment of household bills and expenses. CT Page 1158
Notwithstanding the foregoing, it was the defendant's claim that she is current with regard to child support orders.
The defendant felt, notwithstanding the problems recited, that the marriage could have been saved if the parties had actively participated in counseling.
As concerns the defendant's requests as to personalty, particularly a certain violin, the defendant's testimony was to the effect that this was given to her in 1984.
For the purpose of effecting and maintaining contacts between the defendant and the children, the defendant purchased cell phones for the children as a means of accomplishing that, which costs her $35.00 a month.
As of this coming July, the defendant will have been at her present position for five years.
A relative of the defendant, one Mary Rogers, has endeavored to help and assist the parties and the testimony was to the effect that she has assisted to the extent of $6,000.00 ± in gifts and help.
There was testimony to the effect that on one occasion that the plaintiff sold an undescribed asset and bought the defendant a diamond ring for $1,500.00. Apparently that did not preserve the union.
The plaintiff is apparently an ardent cyclist and rides a bicycle 12 miles back and forth to his work. His testimony being to the effect that he did that so that the defendant could have a car.
It is clear by the testimony of the parties that physical violence was not a cause of the breakdown.
The defendant felt that the plaintiff in the marital union was controlling.
The now adult daughter Cynthia will start working very shortly at the Mohegan Sun Casino. The child's health was described as good; she was a high school graduate.
The chid Stephanie is age 17, is in good health and attends Windham High School as a senior and is on the honor roll.
Some of the testimony was to the effect that the plaintiff had caused CT Page 1159 the defendant to engage in certain conduct of an intimate nature for which the plaintiff paid her, which need not be dwelt upon.
From the exhibits presented to the court, the court finds from Plaintiff's Exhibit 1.' letter to the plaintiff and the defendant from United States Department of Agriculture verifying the amount that would be due to that department in the event of a sale of the subject premises being in the amount of $34,165.18. The exhibit indicating that the account does not accrue interest.
Attached to that exhibit is a supplemental sheet indicating that the amount due, in fact, is not required to be paid until the property is sold or no longer used as the borrower's residence.
Plaintiff's Exhibit 2, a statement from the Office of the Tax Collector in the Town of Windham indicating that the total amount due for premises known as 52 Parrish Hill Road in North Windham is presently to the amount of $6,276.58.
Plaintiff's Exhibit 3 is a promissory note dated December 20, 1998 from the plaintiff and the defendant to Carl Beckert, Sr. or Patricia Beckert, parents of the plaintiff, in the amount of $37,944.63; interest, 7% annually. It provides for monthly installments of $440.49 beginning January 20, 1999 and continuing through December 20, 2008, the due date. The signatures of the plaintiff and the defendant are attached to the exhibit.
From Plaintiff's Exhibit 4, a statement from GMAC directed to the plaintiff dated April 26, 2001. To the exhibit is attached a schedule indicating the declining balance as a result of payments verifying the amount of the original debt of $47,000.00, interest at the rate of 9.35%, balance as of the date of the exhibit, $40,125.43.
Plaintiff's Exhibit 5, a document from Chrysler Financial entitled "Return of Collateral" having to do with a certain motor vehicle, a 1999 Plymouth Breeze. This indicates that the vehicle was returned to Chrysler on February 20, 2001.
Plaintiff's Exhibit 6, a statement from Chrysler Financial entitled "Notice of Repossession or Voluntary Surrender" as to a certain 1999 Plymouth Breeze motor vehicle and indicating the total amount due being $16,453.77.
Plaintiff's Exhibit 7 are two cards, letters or notes written by the defendant to the plaintiff indicating that at least for a substantial period of time that the marital union in fact appeared to be a good one CT Page 1160 and the content of these notes were in effect quite laudatory on the part of the defendant; the same being addressed to the plaintiff One of the affectionate notes is dated February 14, 1997.
Defendant's Exhibit A, a statement from the plaintiff's employer as concerns certain prospective pension benefits indicating that the pension to which the plaintiff would be entitled, according to this exhibit, would be to the amount of $1,301.83 on a monthly basis at such time as the plaintiff might be entitled thereto. This calculation was predicated on the plaintiff leaving State service as of January 1, 2002.
Defendant's Exhibit B, a statement from Pension Appraisers, Inc., dated November 12, 2001 directed to counsel for the defendant indicating that the present value of the marital share of the plaintiff's defined pension benefit as of November 14, 2001 would be $69,232.53.
Defendant's Exhibit C is an e-mail to the defendant from the plaintiff sent June 16, 2001; the same containing unhappy, unfortunate representations or allegations that need not be dwelt upon.
The same would apply to Defendant's Exhibit D.
Defendant's Exhibit B, an appraisal of real estate at 52 Parrish Hill Road in North Windham, Connecticut as of October 18, 2001 by one A. Carl Boecherer, III valuing the property as of October 26, 2001 at $100,000.00. Various and sundry schedules are appended to the appraisal as well as photographs of the subject premises from a variety of vantage points. Also enclosed and attached are photos of the interior of the subject premises and a layout of the same with various other attachments representative of appraisals in general and photographs and statements as concerns comparables. Also included is a copy of the deed from Walker to the plaintiff and the defendant dated February 14, 1984 and indicating that the purchase price for the subject premises was to the amount of $58,000.00.
Defendant's Exhibit F, a notice from Chrysler Financial entitled "Notice of Disposition of Proceeds of Sale with Deficiency" indicating that as a result of the voluntary repossession of the 1999 Plymouth Breeze motor vehicle that there was a deficiency resulting therefrom to the amount of $5,338.75.
Attached to the exhibits is a copy of a restraining order entered by the court, Dyer, J., on December 11, 2000.
Defendant's Exhibit H is a recapitulation by the plaintiff of the defendant as to the various and sundry support payments that have been CT Page 1161 made during the pendency of this matter.
From the financial affidavits of the parties, the court finds, as earlier noted, that the plaintiff is employed by the State of Connecticut, Department of Transportation. His title is that of a general supervisory assistant. His place of employment is in Canterbury. Gross weekly wage, $769.88. Various and sundry deductions for taxes, medical, etc., $241.35, for a net of $444.90. Additionally, the plaintiff shows $150.00 a week being received from the defendant with regard to an earlier entered support order. Total net weekly income as of the date of the affidavit being January 16, 2002, $594.90; weekly expenses, $608.64. Total debt shown on the affidavit including a loan to the plaintiff's father and other obligations, as earlier noted, presently totaling $88,076.33.
The real estate at 52 Parrish Hill Road in North Windham is valued at $100,000.00 with an equity stated on the financial affidavit as being $60,619.00, which is misleading.
The 1997 Mitsubishi motor vehicle shown on the affidavit is valued at $5,500.00 with a loan balance of $5,800.00 for a zero equity; personal property, $1,200.00; $175.00 in the bank.
From the defendant's financial affidavit, she is employed by the Mashantucket Pequot Tribal Nation as a surveillance supervisor; gross weekly income, $653.65; deductions, taxes, etc., $191.91, for a net of $461.74. Weekly expenses, $487.72; debt as shown on her affidavit amounting to $35,600.00.
The defendant values the 52 Parrish Hill Road, North Windham property in the same fashion as the plaintiff. Her affidavit notes the antique violin, earlier touched on, and a kayak valued at $800.00; no other assets.
From the Child Support Guideline figures and computation, the court notes that the obligation from the defendant mother to the plaintiff father for the now one remaining minor child would be to the amount of $96.00 a week and the apportionment as concerns unreimbursed medical expenses, 37% to the defendant mother and 63% to the plaintiff father.
From the health form, the court notes that this is the first marriage for the plaintiff the second for the defendant.
Each has a college education.
 The Law
CT Page 1162
The court has considered all of the statutes which apply in matters of this nature which include without limitation Connecticut General Statutes (C.G.S.) §§ 46b-82 regarding alimony, 46b-62 regarding attorney's fees and 46b-55, 46b-83 and 46b-84 as concerns support.
The court has considered all of the applicable case law that governs the matter.
The court has considered the testimony of the parties, their candor or lack thereof, and all exhibits and the arguments of counsel.
In considering the issue of alimony and particularly the proposed orders submitted to the court, the court has considered the length of the marriage, the cause of the breakdown and dissolution, the age, health, station, occupation and employability of each of the parties and the estate and needs of the parties.
The court has considered the standards of living of the parties.
As concerns the one remaining minor child, Stephanie Beckert born September 9. 1984, the court has considered the child's age and her present circumstances residing with the plaintiff.
The court has considered the relationship that exists by the plaintiff and the defendant with the one minor child Stephanie and the testimony as concerns the child's age, educational situation and the fact that the child appears to be doing well as a senior in high school.
The court has considered the respective financial positions of the plaintiff who has been for 22 years employed with the State of Connecticut, Department of Transportation, and the defendant who presently holds a surveillance position with the Foxwood's Casino.
The court has considered their prospects for future income and opportunities incident thereto.
The court has considered the issue of fault.
 Discussion
This is a marriage of 18 years.
There were two children issue of this marital union. The oldest chid is now 19 and in the work-a-day world; the youngest child is 17, is a senior in high school and doing well. CT Page 1163
Both the plaintiff and the defendant in this proceeding are well educated and have college degrees.
This is the first marriage for the plaintiff and the second for the defendant.
The plaintiff is age 41; the defendant, age 38.
The plaintiff's employment has been for a very lengthy period of time with the State of Connecticut, Department of Transportation.
Admittedly, both parties have substantial debt and the principal equity, if any, exists with regard to the marital home.
It would appear that the employment situation for both parties is fairly secure. The defendant having been at her present position for the last 4-1/2 years.
It would appear that for many years, up until the time of separation, that the parties had a reasonably good and tolerable marital union; particularly mindful of two cards written by the defendant to the plaintiff which were quite laudatory. It may be that the marriage foundered on the rocks of matters of intimacy extending beyond just the plaintiff and the defendant and the consequences thereof.
It does not appear that there were any substantial problems with regard to the immoderate use or resort to alcohol or drugs.
The testimony would seem to suggest that the defendant had strayed from the fold in 1996 and 1998; however, in more recent times, clearly both parties were at fault with regard to some of their conduct, which need not be dwelt on in any detail.
Fortunately, the health of both of the parties appears to be reasonably good.
The plaintiff acknowledged violating the standing orders and a restraining order that was outstanding; this apparently due to the emotional stress and upheaval with regard to the contemplated dissolution of the marriage and the strong feelings that were generated by virtue of the prospect of the marriage being dissolved.
In the health category, the defendant has a problem with asthma and does require a prescription regimen, which would appear to be fairly costly. CT Page 1164
It may be that the one month cancellation of the health coverage was an unintended consequence on the part of the plaintiff and that no long term harm was done.
The court is mindful of the request which has been made for a permanent restraining order precluding the plaintiff from sending any e-mail communications to the defendant.
The court enters the following orders:
As concerns the remaining minor child Stephanie Beckert, born September 9, 1984, there shall be joint legal custody between the plaintiff and the defendant. The primary residential custodial parent shall be the plaintiff father. Reasonable rights of visitation to the defendant shall include, but not be limited to, Monday, Wednesday and Friday from 2:00 p.m. to 10:00 p.m., again mindful of the child's age, one week from November 2Oth to December 5th and the week of April school break 2002 and such other times as may be agreed between the defendant and the minor child within reason; again, mindful of the child's age; to wit, age 17.
The defendant shall quit claim by proper instrument her interest in real estate known as 52 Parrish Hill Road, North Windham to the plaintiff and the plaintiff shall be responsible for any debts, mortgages or liens due on said property including GMAC mortgage, Farmer's Home Loan Bank and any delinquent taxes and shall hold the defendant harmless therefrom.
The court enters no order of alimony as to either the plaintiff or the defendant.
The defendant shall be entitled to claim the minor child Stephanie for income tax purposes for the year 2001 and the defendant shall be entitled to claim the minor child Cynthia for the same year.
In accordance with the Guideline Worksheet, the defendant shall pay to the plaintiff child support for the minor child Stephanie in the amount of $96.00 per week.
The plaintiff shall be responsible for the debt to Chrysler Financial incident to the motor vehicle that was voluntarily surrendered, and in addition thereto, the plaintiff shall be responsible for the debt to his parents as reflected on his financial affidavit. The alleged balance being to the amount of $29,995.33.
The plaintiff shall hold the defendant harmless as concerns those two obligations. CT Page 1165
The defendant shall be responsible for her educational debts which include the debts to ECSU, CALS, J.C. Penney and Sears as reflected on her financial affidavit and the defendant shall further be responsible for the debt to her parent mother, Eleanor O'Neil, as reflected on her financial affidavit and hold the plaintiff harmless therefrom.
The defendant shall be entitled to retain her modest 401K shown on her financial affidavit as being valued at $1,500.00.
The defendant shall have, receive and be entitled to 40% of the value of the plaintiff's State of Connecticut pension by way of a Qualified Domestic Relations Order and receive the same at such time as it may be in payout status.
The plaintiff may keep and retain the contents of the family residence at 52 Parrish Hill Road, North Windham, with the exception of a certain beer stein which shall be delivered over to the defendant.
The plaintiff shall retrieve the defendant's kayak from his parent father and deliver the same over to the defendant.
The defendant shall be entitled to her books and records and a TV, VCR and stereo purchased from Sears.
The defendant shall within six months return to the now adult daughter Cynthia the funds taken from the daughter's account which were used by the defendant for counsel fees. The same, according to the testimony, amounting to the amount of $800.00.
The defendant shall return to the plaintiff a certain violin which was described as a family heirloom received by the plaintiff from his late grandparent. The same to be delivered over within 30 days.
It would appear from the testimony that in fact the plaintiff has violated certain orders entered by the court as concerns contacts between the parties involving e-mail matters and items of like nature. Mindful of the heated and intense emotional nature of the relationship and the proceedings, the violations, while understandable, nevertheless do constitute a violation of the court's orders and the plaintiff is adjudged to have been a contempt of the same.
Mindful of the history of the strained relationship between the plaintiff and defendant, the court will order and direct that a restraining order continue precluding the plaintiff from having contact with the defendant except as concerns matters involving either of the CT Page 1166 children issue of this union, particularly the minor child Stephanie. Admittedly, the older child Cynthia now having attained her majority may, should she be so disposed, have contact with her father assuming that the same may be conducted in a quiet and peaceful manner.
The court accepts the testimony of the defendant with regard to her being current as concerns previously ordered child support and acknowledges the fact that she has continued paying at the higher rate even though the child Cynthia attained her majority in July of 2001.
Mindful of the substantial debt reflected on the plaintiff's financial affidavit and his hope to save the home and residence for the children and his custody of the child Stephanie, and mindful that no itemized breakdown has been presented to the court as concerns the defendant's counsel request for attorney's fees, the court directs that the defendant shall be responsible solely for such fees and costs.
The court grants the relief prayed for and dissolves the marriage on the grounds of irretrievable breakdown and declares the parties to be single and unmarried pursuant to the provisions of the statute.
____________________ Austin, J.